# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| GUY SUNADA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 2:08-cv-1027-RCJ-LRL |
| v. ) | |
| ) | |
| CLARK COUNTY SCHOOL DISTRICT, a ) | **ORDER** |
| Political Subdivision of the State of Nevada, ) | |
| ROE Corporations I-X and DOES I-X, ) | |
| Inclusive, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Currently before the Court is a Motion in Limine to Allow Evidence of Discrimination Throughout Plaintiff's Employment (#24) filed by Plaintiff Guy Sunada ("Plaintiff") on August 24, 2009. Defendant Clark County School District (the "School District") filed an Opposition to Plaintiff's Motion in Limine (#26) on September 10, 2009.

Also before the Court is a Motion for Summary Judgment (#28) filed by the School District on October 1, 2009, and a Motion for Summary Judgment (#29) filed by Plaintiff on October 1, 2009. Plaintiff and the School District filed Oppositions to the Motions for Summary Judgment (#28/29) on October 19, 2010, and Replies (#32/33) on November 2, 2009.

The Court heard oral argument on the motions on March 15, 2010.

## BACKGROUND

This case involves a claim of discrimination under the Americans with Disabilities Act ("ADA") brought by Plaintiff against the School District.

In August 2005, Plaintiff applied for a position with the School District to work as a school bus driver. (Pl.'s Mot. for Summary Judgment (#29) at 2). According to the School

District's description of the bus driver job position, a bus driver must be able to perform the following essential job functions: (1) driving a school bus to transport pupils to and from school and on special trips; (2) maintaining student order on the bus; (3) checking mechanical conditions, gas, oil, fluids, tires; (4) inspecting bus safety equipment before leaving on route; and (5) conducting emergency evacuation drills for students on the bus. (Def.'s Mot. for Summary Judgment (#28) at Ex. 3). In addition to these essential tasks, bus drivers with the school district must be able to perform the essential functions of the special education bus driver position for instances when a bus driver is required to transport special education students. The essential job functions of a special education bus driver include all of the tasks listed above, with the addition of being able to assist handicapped pupils on and off the bus and the lifting of pupils if necessary. Id. at Ex. 4.

During the application process in 2005, Plaintiff filed a document entitled "Confidential Medical History" with the School District. In that document, Plaintiff indicated that he suffered from a back injury and had back pain. (Pl.'s Mot. for Summary Judgment (#29) at Ex. 2). In addition, he indicated that his past employment had been restricted from repeated bending, stooping, twisting or lifting. Id. Plaintiff stated that his back pain was caused by a work related injury that occurred on November 5, 1996, and a corresponding discectomy that same year. Id.

Although indicating in his confidential medical report that he had back problems, on June 25, 2005, Plaintiff filed a "Screening Document" with the School District wherein Plaintiff stated that he understood the job requirements for the bus driver position and that he was able to perform the essential tasks for that position. (Def.'s Mot. for Summary Judgment (#28) at Ex. 2). In addition to the foregoing, during the application process, Plaintiff was required to procure a medical examiner's certificate which he was to carry while operating a commercial motor vehicle such as a school bus. Id. at Ex. 5. As a prerequisite to obtaining the medical examiner's certificate, Plaintiff had to undergo a medical examination for commercial driver fitness. Id. at Ex. 6. Plaintiff underwent this examination on June 28, 2005. According to the medical examination report, Plaintiff marked "no" when asked if he suffered from a spinal

injury, chronic low back pain, or any illness or injury in the last five years. Id.

As noted in his confidential medical history, Plaintiff allegedly suffered a back injury in 1996 while employed at a construction company. Id. at Ex. 1, p. 30. According to his deposition, Plaintiff's back improved following the accident until 2003. Id. at Ex. 1, p. 31. During that time, Plaintiff worked a variety of jobs including a position as a tour bus driver, operating a towing company, and working as a tour representative. Plaintiff testified that he didn't have any problems with his back while working at those positions. Id. at Ex. 1, pp. 45-50.

On August 1, 2005, Plaintiff was hired as a Bus Driver Trainee. According to his deposition, at the time he started employment with the School District, Plaintiff suffered from lower back pain. However, Plaintiff testified that when he was first hired his lower back problems did not in any way affect his ability to perform his job duties as a school bus driver. Id. at Ex. 1, p. 55. According to Plaintiff, the only "thing it affected as part of my job was walking to and from the bus." Id. at Ex. 1, p. 56. Because of trouble walking, Plaintiff testified that in September of 2005, he requested from his supervisor, Priscilla McCoy ("McCoy"), that he be able to use a cane to walk to and from his bus. Id. at Ex. 1, p. 57. Plaintiff testified that this was a verbal request, and that he did not provide his supervisor with any documents or medical records regarding his condition. Id. According to Plaintiff, McCoy denied his request to use a cane because it was against the school district's policies and procedures.[1]

Plaintiff continued to work as a school bus driver through 2005 and 2006. Plaintiff testified that during 2006 he never made a request for an accommodation for his back problems. Id. at Ex. 1, p. 84.

On March 28, 2007, Plaintiff filed a workmen's compensation claim with the School District after he injured his neck while driving his assigned school bus. Id. at Ex. 8. According to the claim, Plaintiff was driving on the interstate when he hit an uneven spot on the road and

---

[1] Plaintiff testified that he was first prescribed a cane for walking in 2003. Id. at Ex. 1, p. 73. Plaintiff testified that he never provided the School District with any documentation regarding that prescription or his medical need to use a cane. Id.

his seat "bottomed-out" sending "a jolt" through his body. Id. Following the incident, Plaintiff informed the School District that he would be having surgery on his lower back on June 18, 2007, for injuries relating to the 1996 accident. Because of the neck injury and back surgery, Plaintiff was placed on Temporary Modified Duty from April 16, 2007 to August 13, 2007. According to Defendants, the Temporary Modified Duty program allows employees with medical restrictions to work modified job duties while they are unable to perform the essential functions of their regular job. Since Plaintiff's restrictions precluded him from safely operating a school bus, his job duties were modified such that instead of driving a bus, he worked as a dispatch operator. Id. at Ex. 1, pp. 42-43. Plaintiff received the same pay while working as a dispatcher as he had as a bus driver. Id.

Following his change to modified duty, on August 21, 2007, Plaintiff requested time off under the Family Medical Leave Act. Id. at Ex. 1, p. 85. According to his Family Medical Leave Request Form, Plaintiff suffered a serious illness in the form of lower back pain. Id. at Ex. 10. He sought leave from August 2007 through November 2007. This request was granted by the School District. Id. at Ex. 11. In November 2007, Plaintiff was medically cleared to return to work and returned to his bus driving position.

On October 19, 2007, while out on medical leave, Plaintiff filed a Charge of Discrimination with the Nevada Equal Rights Commission ("NERC"). Id. at Ex. 12. In the charge, Plaintiff stated that he was discriminated against due to his disability. Id. According to Plaintiff, he was denied a reasonable accommodation. In the dates that the discrimination took place, Plaintiff listed the earliest as March 1, 2007, and the latest as September 17, 2007; but Plaintiff stated that it was a continuing action. According to Plaintiff, "from March 1, 2007 to the present, I [was] denied a reasonable accommodation. I am not allowed to use my cane. I have been told that I am not allowed to use my cane because it could be used as a weapon." Id. According to Plaintiff, "[h]aving to walk without the use of my cane has caused my disability to get worse and to require surgery sooner than expected. In addition, there are insufficient disabled parking spots to accommodate . . . disabled employees." Id.

In an affidavit, Plaintiff's supervisor Lori A. Whitney ("Whitney") stated that on March

4

1, 2007, (the date the alleged discrimination began according to Plaintiff's charge), Plaintiff came to her and asked about the School District's policy regarding bus drivers and cane use. Id. at Ex. 14, p. 2. Whitney stated that at the time Plaintiff asked about the policy, Plaintiff did not have a cane in his possession, and to her knowledge, he had never reported to work with a cane. In addition, Whitney stated that Plaintiff did not provide her with any specific medical information to suggest that he "had a personal medical condition that warranted his need to use a cane while working." Id. According to her affidavit, Whitney informed Plaintiff that any bus driver seeking to use a cane would have to receive approval from the administration. Id. at Ex. 14, p. 3. Whitney further stated that Plaintiff never asked her to submit a medical approval request for him to use a cane. Whitney testified that in light of the essential job tasks of a school bus driver, including helping physically disabled students on and off the bus, she would have been required to order a medical review in order to permit Plaintiff to use a cane while working. Id. Finally, Whitney stated that Plaintiff "never asked" her "to allow him to use a cane while working, and he never asked [her] to provide him with any specific accommodations, at anytime during the calendar year 2007, when he actually worked as a school bus driver under [her] supervision." Id.

In his deposition, Plaintiff testified that aside from the modified duty and family medical leave, he did not request any accommodation during 2007. Id. at Ex. 1, pp. 92-93. However, Plaintiff testified that in 2008 he requested a closer parking space in order to avoid walking a certain distance to and from his bus. Id. at Ex. 1, p. 93. Plaintiff did not recall asking to use a cane at that time. Id.

Plaintiff continues to work as a bus driver for the School District. According to the School District, at no time during the pendency of this matter has Plaintiff been terminated or demoted. In fact, the School District states that Plaintiff received a raise every year.

## DISCUSSION

### I. Motion in Limine

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the

course of trials." Luce v. United States, 469 U.S. 38, 41 n.4 (1984).² Courts have broad discretion when deciding motions in limine. Mason v. City of Chicago, 631 F.Supp.2d 1052, 1055 (N.D. Ill. 2009). However, a motion in limine should not be used to resolve factual disputes or weigh evidence. See C & E Serv., Inc. v. Ashland Inc., 539 F.Supp.2d 316, 323 (D.D.C. 2008). To exclude evidence in a motion in limine "the evidence must be inadmissible on all potential grounds." Ind. Ins. Co. v. Gen. Elec. Co., 326 F.Supp.2d 844, 846 (N.D. Ohio 2004); Kiswani v. Phoenix Sec. Agency, Inc., 247 F.R.D. 554 (N.D. Ill. 2008); Wilkins v. K-Mart Corp., 487 F.Supp.2d 1216, 1218-19. "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." Hawthorne Partners v. AT & T Tech., Inc., 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). This is because although rulings on motions in limine save "time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." Wilkins, 487 F.Supp.2d at 1219.

Plaintiff filed a motion in limine seeking to allow evidence of discrimination throughout the entire time period Plaintiff has been employed with the School District. (Mot. in Limine (#24) at 1). Plaintiff acknowledges that in his charge of discrimination filed with NERC, he listed March 1, 2007 as the earliest date of discrimination. Id. at 2. However, Plaintiff states that he also indicated in the body of the charge that he experienced discrimination "from the inception" of his employment with the School District. Id. In addition, Plaintiff argues that the Court should apply the "continuing violation" doctrine to this case and hold that Plaintiff can introduce evidence of discriminatory conduct that predates the limitations period. Id. at 3. Plaintiff argues that the School District's refusal to allow him to use a cane was a "systematic policy or practice of discrimination" which constitutes a "systemic violation." Id. at 4. Based on this "systemic

---

² "In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury." Fed. R. Evid. 103(c).

6

violation," Plaintiff argues that he should "be allowed to present evidence of such discrimination at trial."[3] Id.

Before filing an ADA suit, a plaintiff must timely file a discrimination charge with the EEOC. 42 U.S.C. § 12117(a). Filing a timely charge is a statutory condition that must be satisfied before filing suit in federal court. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). In order to be timely, a plaintiff must file a discrimination charge with the EEOC within 180 days after the alleged violation. 42 U.S.C. § 2000e-5(e). If a plaintiff files a charge with an appropriate state agency, he or she must file the charge within 300 days after the alleged violation. The 300-day limit serves "as a judicial statute of limitations" generally barring a lawsuit on "discriminatory incidents occurring prior to" that 300-day period. See Sosa v. Hiraoka, 920 F.2d 1451, 1455 (9th Cir. 1990).

In this matter, Plaintiff filed a charge of discrimination with NERC, thus triggering the 300-day limitations period under the ADA. However, Plaintiff now seeks to allege other acts of discrimination that occurred before the 300-day limit - specifically the failure by the School District to provide a reasonable accommodation in 2005. Although discriminatory conduct occurring in 2005 is technically outside the limitations period, Plaintiff argues that under the "continuing violations doctrine" such a claim would be timely.

In the Ninth Circuit, the continuing violations doctrine "extends the accrual of a claim if a continuing system of discrimination violates an individual's rights 'up to a point in time that falls within the applicable limitations period.'" Douglas v. Cal. Dept. of Youth Auth., 271

---

[3] In response, the School District argues that Plaintiff's motion in limine was premature under Local Rule 16-3(b) which states, in pertinent part, that "[u]nless otherwise ordered by the court, motions in limine are due thirty (30) days prior to trial . . . ." (Opp. to Motion in Limine (#26) at 1). Despite the School District's argument, the Court finds that the motion in limine is timely in this matter. Although LR 16-3(b) provides that motions in limine should be filed thirty days before trial, both parties filed motions for summary judgment. Part of Plaintiff's motion for summary judgment relates to conduct which occurred prior to March 1, 2007. As a result, in order for the Court to properly consider the motion for summary judgment, it must first determine whether Plaintiff has the right to include alleged discriminatory conduct that occurred before March 1, 2007, or whether Plaintiff's 2005 claims of discrimination are barred by the limitations period of the ADA.

F.3d 812, 822 (9th Cir. 2001)(quoting Williams v. Owens-Illinois, Inc., 665 F.2d 918, 924 (9th Cir. 1982)).  A plaintiff may show a continuing violation by establishing that a defendant's conduct resulted in a "systemic violation."  Id.  A systemic violation is a "systematic policy or practice of discrimination that operated, in part, within the limitations period."  Id.

Although the continuing violations doctrine is recognized in the Ninth Circuit, in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061 (2002), the United States Supreme Court "substantially limited the notion of continuing violations." Cherosky v. Henderson, 330 F.3d 1243, 1246 (9th Cir. 2003).   Following the Supreme Court's ruling in Morgan, the continuing violations doctrine has no applicability to "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" because "[e]ach incident of discrimination and each retaliatory adverse employment action constitutes a separate actionable 'unlawful employment practice.'" Id. (quoting Morgan, 536 U.S. at 114, 122 S.Ct. 2061).  In rejecting the application of the continuing violations doctrine to discrete acts, the Court "explained that '[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act.'"  Id.  In contrast to discrete acts, "the Court carved out an exception for claims based on a hostile work environment."  Id.  The Court noted "that by their very nature hostile environment claims involve repeated conduct . . . [and] claims based on a hostile environment 'will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period.'" Id. (quoting Morgan, 536 U.S. at 127, 122 S.Ct. 2061).  Based on Morgan, the Ninth Circuit states that now "discrete acts [of discrimination] are only timely where such acts occurred within the limitations period."  Id.

As noted in the foregoing, Plaintiff seeks to include alleged acts of discrimination which occurred prior to the 300-day limitation period.  Specifically, Plaintiff seeks to include the School District's "denial of [Plaintiff's] requests to use his cane" in 2005.  (Pl.'s Mot. in Limine (#24) at 4).  To determine whether Plaintiff can include this act of discrimination, the Court must first decide whether it constitutes a discrete act or a continuing violation.  See

Morgan, 536 U.S. at 113-16, 122 S.Ct. 2061.

The Supreme Court has described a discrete act as one that occurs at a particular time - for example, a retaliatory or discriminatory termination, failure to promote, denial of transfer or refusal to hire. Id. at 114, 122 S.Ct. 2061. Each discrete act is a "separate employment practice . . ., even if that action is simply a periodic implementation of an adverse decision previously made." Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 134 (2d Cir. 2003); see Morgan, 536 U.S. at 111, 122 S.Ct. 2061 ("There is simply no indication that the term 'practice' [in 42 U.S.C. § 2000e-2] converts related discrete acts into a single unlawful practice for the purposes of timely filing."). By contrast, a continuing violation "occurs over a series of days or perhaps years" and "is composed of a series of separate acts that collectively constitute one unlawful employment practice." Morgan, 536 U.S. at 115, 117, 122 S.Ct. 2061 (quotations omitted). A hostile work environment claim is an example of a continuing violation claim because it "encompasses a series of related acts which may not be actionable standing alone." Id. at 115-18, 122 S.Ct. 2061.

The Ninth Circuit has not specifically addressed whether the failure to provide a reasonable accommodation constitutes a discrete act. However, in Mayers v. Laboreres' Health & Safety Fund, the Court of Appeals for the District of Columbia held that a claim for failure to accommodate did not constitute a continuing violation. 478 F.3d 364, 368-69 (D.C. Cir. 2007). In that case, the plaintiff requested electric tools in order to be able to accomplish her work after she developed rheumatoid arthritis. The defendant failed to provide the requested tools for several years. The court in that case stated that a "three-year delay in accommodating a plaintiff's disability" may be actionable under the ADA because such accommodation may not be reasonable. Id. However, the court held that the claim was barred because the defendants' "failure to provide the electric tools was a discrete act of discrimination that ended" when they finally provided the tools- which was well before the 180-day limitation period imposed in that case. Id.

In this matter, the Court finds that the alleged failure to accommodate is a discrete act within the meaning of Morgan. Plaintiff asserts that he requested to use a cane in 2005

9

when he began working as a bus driver for the School District. According to Plaintiff, his request was denied based on School District policy. That failure to accommodate was a distinct incident that constituted an unlawful employment practice on its own. It is similar to other discrete acts such as termination, failure to promote, or refusal to hire. Thus, the Court finds that the discriminatory conduct alleged by Plaintiff, specifically the right to use his cane, was a discrete act of discrimination that by its nature constituted a separate act of discrimination which was actionable under the ADA.

Because the Court finds that the alleged act of discrimination which occurred in 2005 was a discrete act of discrimination, Plaintiff was required, under Morgan, to exhaust that claim administratively within the necessary time limits established under the ADA in order to file a claim for relief based on that incident. As noted, Plaintiff filed his charge of discrimination with NERC on October 19, 2007, and alleged the earliest date of discrimination as March 1, 2007. Based on the dates asserted in his charge of discrimination, Plaintiff is barred from asserting a claim for discrimination based on conduct that occurred in 2005.[4]

Thus, based on the foregoing, Plaintiff's motion in limine is denied without prejudice.

## II. Cross-Motions for Summary Judgment

Plaintiff and the School District have both filed motions for summary judgment.

In the School District's motion for summary judgment, the School District first asserts that it is entitled to summary judgment on the claims asserted against it because Plaintiff cannot establish the elements necessary for an ADA or NRS 616.330 disability discrimination claim. (Def.'s Mot. for Summary Judgment (#28) at 15). First, the School District argues that Plaintiff cannot establish that he is a qualified individual with a disability. According to the School District, from April through November 2007, Plaintiff could not perform the essential functions of the bus driver position. The School District notes that

---

[4] The same analysis applies to Plaintiff's claim that he was discriminated against when the School District allegedly denied him the ability to park closer to his school bus in 2005. Such a denial is a discrete act of discrimination under the analysis provided in Morgan.

during that time Plaintiff was put on Temporary Modified Duty from April 16, 2007 to August 13, 2007 because of a neck injury he suffered while driving the school bus. While on modified duty, Plaintiff worked as a dispatch operator because his medical restrictions precluded him from driving a bus. The School District also notes that when his temporary modified status expired, Plaintiff requested and was granted Family Medical Leave for an additional three months because of lower back issues. Based on Plaintiff's request for leave and modified duty, the School District asserts that Plaintiff has conceded that his health conditions precluded him from performing the essential functions of his job.[5]

Second, the School District argues that Plaintiff cannot establish that he suffered an adverse employment action because of his disability. Id. at 19. The School District states that Plaintiff is currently employed as a school bus driver with the district and has maintained that position since 2005. In addition, the School District states that Plaintiff has never been demoted or terminated from his employment with the district.

Third, the School District seeks summary judgment on Plaintiff's lack of reasonable accommodation claim because the School District states that there is no evidence that Plaintiff was denied a reasonable accommodation. Id. at 24. In this regard, the School District argues that aside from being placed on temporary modified duty and being granted family medical leave, Plaintiff never asked anyone within the district "for any other specific accommodation." Id. at 24.

Finally, the School District argues that Plaintiff's negligent infliction of emotional distress claim is without merit. Id. at 25. According to the School District, Plaintiff is barred from bringing an emotional distress claim based on the same facts as his discrimination claim. The School District states that because "Plaintiff has statutory remedies available to redress his claims, he is barred from bringing" an emotional distress claim.

In his cross-motion for summary judgment, Plaintiff argues that he is entitled to

---

[5] The School District's motion for summary judgment focuses only on the time period listed in Plaintiff's charge of discrimination. It does not include any allegations of discrimination that occurred prior to March 2007, and does not address any allegations of discrimination that occurred after November 2007.

11

summary judgment because he requested a reasonable accommodation and the School District failed to provide the requested accommodation or to interact with Plaintiff "about other options that could suffice given his medical condition." (Pl.'s Mot. for Summary Judgment (#29) at 3). Plaintiff asserts that when he began work at the School District in 2005 he was required to use a cane to help support his lower back pain. Plaintiff states that he requested the use of a cane but that his supervisor at that time denied the request. Id. at 2. Plaintiff further states that in 2007 he was ordered by his doctor to "restart the use of his cane," but that he "did not use the cane but instead took FMLA leave from August 2007 to November 2007 following a lumbar fusion surgery." Id. at 3. When Plaintiff returned to work at the end of 2007, Plaintiff stated that his doctor limited his walking distance and "indicated he needed preferred parking." Id. at 3. However, Plaintiff asserts that the School District "refused to provide the requested accommodation." Id. According to Plaintiff, he has continued to request closer parking to this date, but has been repeatedly denied this accommodation. Id. at 6.

### A. Legal Standard

Summary judgment "should be rendered forthwith if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Martinez v. City of Los Angeles, 141 F.3d 1373, 1378 (9th Cir. 1998).

Any dispute regarding a material issue of fact must be genuine—the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." Id. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no 'genuine issue for trial'" and summary judgment is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." British Airways Board v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978). The evidence must be significantly probative, and cannot be merely colorable. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

### B. ADA Claim

As noted in the foregoing, Plaintiff has asserted a claim under the ADA on the basis that the School District repeatedly denied him a reasonable accommodation in the form of either using a cane or parking closer to his school bus.

The ADA represents a congressional judgment that an individual's education, experience, will to succeed, and adaptability may often overcome mere disability. Kaplan v. City of North Las Vegas, 323 F.3d 1226, 1229 (9th Cir. 2003). "The ADA prohibits discrimination against a 'qualified individual with a disability' because of the disability." Id. (quoting 42 U.S.C. § 12112). To sustain a claim under the ADA, an individual must show that: (1) he is "disabled" within the meaning of the Act; (2) he is a "qualified individual" within the meaning of the Act; and (3) he was discriminated against because of his disability. Id.

Here, the School District concedes, for purposes of summary judgment, that Plaintiff satisfied that first requirement to sustain a claim under the ADA - that his is disabled within the meaning of the Act. However, the School District challenges Plaintiff's assertions that he is a qualified individual under the act and that he has been discriminated against because of his disability.

### 1. Qualified Individual

The ADA defines "qualified individual with a disability" as "an individual with a

13

disability who, with or without a reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Hutton v. ELF Atochem North Am., Inc., 273 F.3d 884, 892 (9th Cir. 2001)(quoting U.S.C. § 12111(8)). "The individual must also 'satisfy the requisite skill, experience, education and other job-related requirements of the position." Rohr v. Salt River Project, 555 F.3d 850, 862 (9th Cir. 2009)(quoting Bates v. United Parcel Serv., Inc., 511 F.3d 974, 990 (9th Cir. 2007)).

The School District argues that Plaintiff was not a qualified individual because for "much of the time that both Plaintiff's NERC Charge of Discrimination and Complaint allege he was discriminated against (between March and September 2007), Plaintiff was physically unable to perform the essential functions of the bus driver position." (Def.'s Mot. for Summary Judgment (#28) at 17-18). The School District notes that Plaintiff was placed on modified temporary duty on March 28, 2007, after he injured his neck while driving his school bus. During that time, Plaintiff worked as a dispatch operator because he was medically restricted from operating a school bus. The School District also states that rather than returning to work following the expiration of his modified temporary duty position, Plaintiff requested leave under the Family Medical Leave Act for back surgery. According to the School District, after "confirming that his heath condition precluded him from performing the essential functions of his job," the School District granted Plaintiff's leave request. Plaintiff was not released to return to work by his doctor until November 2007.

In response, Plaintiff asserts that his "back condition did not affect his ability to do his job with the sole exception that walking to and from his bus unassisted could only be done with difficulty and while experiencing pain." (Pl.'s Mot. for Summary Judgment (#29) at 5). Plaintiff states that immediately upon commencing employment in 2005 he requested that he be allowed to use a cane to assist him in walking.[6] Id. However, this request was denied. Id. at 6. Plaintiff also asserts that in 2008 and 2009 he repeatedly

---

[6] As noted in the foregoing, Plaintiff's claim of discrimination regarding his 2005 request to use a cane is barred by the ADA limitations provision.

requested that his supervisor provide him with a parking space closer to his bus.[7]  Id. at 6.  "To date," according to Plaintiff, the School District "has refused to authorize Sunada's request for preferred parking."  Id.  Moreover, Plaintiff asserts that the School District was aware of his disability and need for a reasonable accommodation based on doctor's reports provided to the School District.  Id.

In this matter, there is a question of fact as to whether Plaintiff was a qualified individual from March 1, 2007 through the present.  The School District has provided evidence that Plaintiff was not a qualified individual from March 28, 2007 through November 2007 because Plaintiff sought both modified temporary duty and family medical leave based on his inability to perform the functions of the bus driver position.  The School District granted both of these requests.  However, the School District failed to address the alleged acts of discrimination which occurred from March 1, 2007 to March 28, 2007, and after Plaintiff returned to work in November 2007.[8]  According to Plaintiff, after he returned to work following his family leave, he was under a permanent restriction from his doctor to "use a cane for walking assistance to reduce the stress on his back." (Pl.'s Mot. for Summary Judgment (#29) at 11).  Following this restriction, Plaintiff asserts that in 2008 and 2009 he requested a closer parking space to his bus, but that these requests were "summarily denied without any effort to explore possible alternatives."  Id. at 12.

Because Plaintiff has provided evidentiary support that he was a qualified individual both prior to March 28, 2007 and following his return to work in November 2007, there is a

---

[7] At oral argument, counsel for the School District indicated that it had won an arbitration on Plaintiff's 2008 discrimination claims.  The arbitration decision was not provided to the Court and the scope of that decision is not known.  However, the Court will determine whether Plaintiff can still state a claim for any alleged discrimination in 2008 following the arbitration decision at a later date.

[8] In his Charge of Discrimination with NERC, Plaintiff asserted that the discrimination was a continuing action.  (Def.'s Mot. for Summary Judgment (#28) at Ex. 12).  According to the Ninth Circuit, it is well-established that an employee may include incidents of discrimination in his complaint even though such incidents are not listed in his charge to the EEOC, if such incidents are "like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC."  Brown, 765 F.2d at 813.  Plaintiff's claims of discrimination occurring in 2008 and 2009 are reasonably related to the allegations of his NERC charge because they allege the same requests for accommodations based on the same alleged disability.

genuine issue of fact regarding whether the School District violated the ADA by denying his alleged requests for accommodation. Because of this question of fact, summary judgment is inappropriate on this claim.

### 2. Adverse Employment Action

The School District also moves for summary judgment on Plaintiff's ADA claim on the grounds that Plaintiff cannot establish that he suffered an adverse employment action because of his disability. (Def.'s Mot. for Summary Judgment (#28) at 19). The School District notes that in his complaint, Plaintiff asserts that as "a result of Plaintiff's disability, Defendant demoted and/or eventually terminated Plaintiff." Id. However, at his deposition, Plaintiff conceded that he has never been demoted or terminated from his employment at the School District. As a result, the School District argues that there "is absolutely no evidence that Plaintiff suffered an adverse employment action as that term is defined by case law." Id. at 21. Moreover, the School District states that Plaintiff cannot argue that the School District's alleged refusal to allow him to use a cane constitutes an adverse employment action because Plaintiff "only asked his Supervisor Lori A. Whitney about the procedures related to bus drivers and cane use while on the job." Id. According to the School District, "[a]t the time he inquired about these rules, [Plaintiff] did not actually report to work with a cane in his possession, nor did he ask and/or present any medical information to Ms. Whitney related to a personal medical condition he might have had that would warrant his need to use a cane." Id.

In response, Plaintiff argues that in 2007, the School District "obstinately refused to explore possible accommodations following [Plaintiff's] lumbar fusion surgery performed in June 2007." (Pl.'s Mot. for Summary Judgment (#29) at 12). According to Plaintiff, one of his treating physicians "explicitly informed" the School District "in writing that [Plaintiff] was subject to work restrictions" - specifically, that Plaintiff was limited to walking fifty yards at any one time and that Plaintiff needed preferred parking. Id. Plaintiff alleges that he requested preferred parking in 2008 and 2009 but was denied both times.

Under the ADA, no covered entity "shall discriminate against a qualified individual on

the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the covered entity."  42 U.S.C. § 12112(5)(a).

In this case, the Court denies both parties' motions for summary judgment on Plaintiff's ADA claim.  The School District alleges that Plaintiff cannot show that he suffered an adverse employment action.  However, Plaintiff testified that he requested preferred parking after his back surgery in 2008 and 2009 and was denied that request.[9]  Plaintiff also provided evidence that his doctor recommended that he only walk a limited distance because of his lower back injury.  Because Plaintiff provided evidence that he was allegedly denied a reasonable accommodation, summary judgment on behalf of the School District is inappropriate.

On the other hand, the School District provided evidence that the only reasonable accommodations Plaintiff requested in 2007 was for temporary modified duty and family medical leave.  The School District granted both of these requests.  The School District has provided evidence that Plaintiff did not make any other reasonable accommodation request in either 2006 or 2007.[10]  However, the School District does not address the denial of Plaintiff's requests for a reasonable accommodation in 2008 and 2009.  Because the

---

[9] The School District does not address any alleged acts of discrimination that occurred after Plaintiff's NERC file was charged.  However, the Court may consider those acts of discrimination as long as they are like or reasonably related to the allegations made in the charge of discrimination.  See Brown, 765 F.2d at 813.  Whether Plaintiff's 2008 claims are barred by an arbitration decision has not been briefed by the parties.

[10] In the absence of a specific request for a reasonable accommodation, an employer is "required to initiate the interactive process only when an employee is unable to make such a request and the company knows of the existence of the employee's disability."  Brown v. Lucky Stores, Inc., 246 F.3d 1182, 1188 (9th Cir. 2001).

17

School District has shown that there is a question of fact regarding whether Plaintiff requested a reasonable accommodation, summary judgment is inappropriate on behalf of Plaintiff on this claim.

### C.  NRS 616.330 Claim

In addition to filing a disability discrimination claim under the ADA, Plaintiff also filed a discrimination claim pursuant to NRS 616.330.  Both parties argue that they are entitled to summary judgment on the state law discrimination claim for the same reasons asserted in their ADA arguments.

The language of NRS 616.330 "is almost identical to the language of the ADA," and courts "look to federal cases for guidance in applying" the Nevada statute.  Puckett v. Porsche Cars of N. Am., Inc., 976 F.Supp. 957, 960 (D.Nev. 1997).  Because the Nevada statute is construed under federal law, summary judgment is denied on this claim as to both parties for the same reasons summary judgment was denied on Plaintiff's ADA claim.

### D.  Negligent Infliction of Emotional Distress

Finally, the parties have moved for summary judgment on Plaintiff's claim of negligent infliction of emotional distress.  The School District argues that it is entitled to summary judgment on this claim because Plaintiff is precluded from bringing a common-law tort claim based on the same facts as his statutory discrimination claims.  (Def.'s Mot. for Summary Judgment (#28) at 27).  The School District argues that Plaintiff is not entitled to bring a negligent infliction of emotional distress claim because he has statutory remedies for the School District's alleged unlawful conduct.  On the other hand, Plaintiff moves for summary judgment on this claim on the ground that the School District is the proximate cause of Plaintiff's emotional distress.  (Pl.'s Mot. for Summary Judgment (#29) at 14).  According to Plaintiff, he suffered from moodiness, depression and insomnia from the inception of his employment with the School District.  Id.  These symptoms were the result of the School District's failure to accommodate his request to use a cane or park closer to his school bus.  As such, Plaintiff claims he is entitled to summary judgment.

Under Nevada law, "in cases where emotional distress damages are not secondary

to physical injuries, but rather, precipitate physical symptoms, either a physical impact must have occurred or, in the absence of physical impact, proof of 'serious emotional distress' causing physical injury or illness must be presented." Barmettler v. Reno Air, Inc., 114 Nev. 441, 448, 956 P.2d 1382 (Nev. 1998).

Here, Plaintiff has not provided any evidence that he suffered such "serious emotional distress" that he suffered a physical injury or illness. As noted in the foregoing, Plaintiff asserts that he suffered from moodiness, depression and insomnia from the School District's alleged conduct. However, "[i]nsomnia and general physical or emotional discomfort are insufficient" to satisfy the physical injury or illness standard necessary to state a claim for negligent infliction of emotional distress. Chowdhry v. NVLH, Inc., 109 Nev. 478, 482-83, 851 P.2d 459 (Nev. 1993). As such, the Court grants the School District summary judgment on this claim.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Plaintiff's Motion in Limine (#24) is DENIED without prejudice.

It is FURTHER ORDERED that Defendant's Motion for Summary Judgment (#28) is DENIED IN PART and GRANTED IN PART. Defendant's motion is denied as to Plaintiff's ADA and NRS 616.330 claims. Defendant's motion is granted as to Plaintiff's negligent infliction of emotional distress claim.

It is FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (#29) is DENIED.

DATED: This _23_ day of March, 2010.

_____
United States District Judge